UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

CHAD BRELAND,

                         Petitioner,

    -against-

DALE ARTUS,

                         Respondent.

------------------------------------------------------------- X

FILED
IN CLERKS OFFICE
U.S —

★ MAR 2 9 2006 ★

P.M. _____

05 CV 4076 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION
AND ORDER

ROSS, United States District Judge:

     Petitioner pro se, Chad Breland ("Mr. Breland" or "petitioner"), filed the instant petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 22, 2005 claiming that (1) he

was denied his due process right to a fair trial because the trial court erred in refusing to grant his

motion to sever his case into two separate trials; (2) he was deprived of his due process right to a

fair trial because there was insufficient evidence to prove his guilt beyond a reasonable doubt and

the jury verdict went against the weight of the evidence; (3) he was denied his right against

unreasonable search and seizure because his arrest was made without probable cause and the trial

court erred in denying his suppression motion; (4) he was deprived of his right to be tried on the

indictment returned by the grand jury because the trial court improperly amended the indictment;

and (5) he was denied his right to effective assistance of trial and appellate counsel. For the

reasons stated below, the court denies the instant petition for a writ of habeas corpus.

## BACKGROUND

     In the instant petition, Mr. Breland is challenging his convictions arising from two

separate indictments charging crimes that occurred on two different dates on November 1995 and were prosecuted, over his objections, in one consolidated trial. With regard to the first indictment, the government charged that petitioner and two accomplices broke into a residence on November 13, 1995 under the guise of DEA agents, attacking one of the tenants with a knife and ransacking the premises. With regard to the second indictment, the government charged that petitioner and a male accomplice broke into another residence on November 27, 1995 by having a female accomplice gain access to the victim's home by pretending to have car trouble. The government also accused petitioner of assaulting the victim with a gun and then stealing a bag full of Nintendo games from the residence.

At trial, the government presented, <u>inter alia</u>, the following evidence: (1) Silverneata Hill, one of the victims of the November 13, 1995 burglary, testified that she identified petitioner as one of the perpetrators of that crime in a lineup held a few weeks after the burglary; (2) Detective Constance Nigro testified that petitioner made oral and written statements, after waiving his <u>Miranda</u> rights, admitting his involvement in the November 13, 1995 burglary; and (3) Officer Edward Mannone testified that he observed petitioner putting a plastic bag, in which an assault rifle and Nintendo games were later found, in a garbage near the location of the November 27, 1995 burglary shortly after its occurrence. Testifying in his own defense, petitioner denied participation in the November 13, 1995 burglary and presented evidence of an alibi for the November 27, 1995 burglary.

Following a jury trial, petitioner was convicted of six counts of first-degree burglary, four counts of first-degree robbery, four counts of second-degree burglary, one count of second-degree weapon possession, one count of third-degree weapon possession, and one count of first-degree

2

criminal impersonation. On October 27, 1997, two judgments of conviction were entered against petitioner and petitioner was sentenced to an aggregate prison term of thirty years.

Petitioner appealed to the Appellate Division, which affirmed the conviction by order dated March 15, 2004. People v. Breland, 772 N.Y.S.2d 844, 845 (2d Dep't 2004). The Appellate Division explicitly stated that petitioner had not preserved for appellate review his "contention that the evidence was insufficient to establish his guilt of burglary in the first degree, robbery in the first degree, burglary in the second degree, [and] criminal possession of a weapon in the second degree." Id. The court went on to state that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish petitioner's guilt beyond a reasonable doubt." Id. (citations omitted). The court also found that "the verdict of guilt was not against the weight of the evidence." Id. The court summarily dismissed petitioner's remaining claims, including those raised in his supplemental pro se brief, as meritless. Id. Thereafter, petitioner sought leave to appeal to the Court of Appeals, which was denied by order dated May 20, 2004. People v. Breland, 2 N.Y.3d 796 (2004).

Petitioner's conviction became final on approximately August 18, 2004, ninety days after the Court of Appeals denied leave to appeal. Mr. Breland filed his petition for a writ of habeas corpus on August 18, 2005, within one year of the final date of his conviction. Thus, his petition is timely and properly before this court.

## DISCUSSION

### I.   AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state

court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

4

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)); see also DeBerry v. Portuondo, 403 F.3d 57, 66-67 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 178 (2d Cir. 2003). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)).

## II.      Procedural Default

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir.

2000) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 749-50 (1991); <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." <u>Id.</u> (internal quotation marks and citation omitted). The Second Circuit held in <u>Fama</u> that where the state court uses language such as "the defendant's remaining contentions are either unpreserved for appellate review or without merit" the claim is subject to federal review. <u>Id.</u> at 810-11. The court's decision in <u>Fama</u> did not overturn prior rulings, however, that a state court decision constitutes a procedural default where the court stated that a claim was "not preserved for appellate review" before ruling "in any event" on the merits. <u>Id.</u> at 810 n.4.

Where a state court rules against a petitioner on procedural grounds, the petitioner faces a "procedural default" precluding federal habeas review. A procedural default may be excused by a federal court, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will "result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

## III.    Exhaustion of State Remedies

In general, petitioner must exhaust available state remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1) (A); see also Picard v. Connor, 404 U.S. 270, 275-76 (1971); Daye v. Attorney General, 696 F.2d 186, 190 (2d Cir. 1982) (en banc). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." Daye, 696 F.2d at 191. Exhaustion of a federal constitutional claim in state court does not invariably require citation of "book and verse on the federal constitution." Picard, 404 U.S. at 278 (internal quotation marks omitted). A claim may be presented for habeas review even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his claim before the state court, relied on pertinent federal cases employing constitutional analysis, relied on state cases employing constitutional analysis in like fact situations, asserted his claims in terms so particular as to call to mind specific rights protected by the constitution, or alleged a pattern of facts well within mainstream of constitutional litigation. See Daye, 696 F.2d 186.

When a petition contains both exhausted and unexhausted claims (a so-called "mixed petition), the petition must ordinarily be dismissed unless the petitioner requests a stay and abeyance of the petition while he exhausts his claims in state court or he chooses to proceed with only his exhausted claims. See Rhines v. Weber, 125 S. Ct. 1528, 1535 (2005); Rose v. Lundy, 455 U.S. 509, 522 (1982). A "stay and abeyance is only appropriate when the district court

determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Rhines, 125 S. Ct. at 1535. Moreover, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id. If a court determines that stay and abeyance is inappropriate, it "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." Id. However, a district court may, in its discretion, review a mixed petition solely for the purpose of denying relief on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."); see also Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002) (recognizing that the district court may deny on the merits unexhausted habeas claims).

## IV.   Petitioner's Claims

### A. *Improper Joinder of the Indictments*

Petitioner claims that he was denied his due process right to a fair trial due to the trial court's decision to consolidate the charges from two separate indictments. On direct appeal, the Appellate Division dismissed petitioner's claim as meritless. Because the claim was adjudicated on the merits, the court applies the deferential standard appropriate under § 2245(d). Under that deferential standard, the court concludes that the Appellate Division's determination was neither contrary to, nor involved an unreasonable application of, federal law.

Improper joinder does not, in itself, amount to a constitutional violation. United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Rather, erroneous joinder violates the Constitution "only if

8

it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." Id.; see also Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993). "[J]oinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." Herring, 11 F.3d at 377. Joinder "'is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person ... in the same trial is a valid governmental interest.'" Id. at 377 (quoting Spencer v. Texas, 385 U.S. 554, 562 (1967)). Moreover, habeas petitioners challenging state court convictions under the general "fairness" mandate of the due process clause "bear an onerous burden" in light of the "significant procedural protection provided by direct review through the state system." Id. at 378. Thus, a habeas petitioner claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial." Id. at 377-78.

Here, petitioner argues that the consolidated trial substantially prejudiced him because his decision to testify about his alibi for the November 27, 1995 crime resulted in impeachment on cross-examination with regard to statements he made about the November 13, 1995 crime. Petitioner claims that, had the cases been severed, he would have refrained from testifying at the trial for the first crime, but would have testified about his alibi at the trial for the second crime.

After reviewing the record, it is clear that the cross-examination of petitioner with regard his statements concerning the November 13, 1995 crime was not favorable to petitioner's case. On direct examination, petitioner admitted that he had accompanied his friend Milton to the location of the burglary earlier that day while Milton purchased drugs from a person who lived in

the building. (Tr. 1097-99.) However, he denied any involvement in the crime that occurred at the residence later that evening. (Tr. 1099-1100.) On cross, the government questioned petitioner about a written summary, drafted by Detective Nigro and signed by petitioner, that suggested that petitioner had personal knowledge about the crime. (Tr. 1166-68.) In the statement, petitioner apparently admitted ringing the doorbell of the residence and observing three of his accomplices enter the premises and take Mrs. Hill upstairs. (Tr. 1167.) Petitioner attempted to explain the discrepancy between his testimony and his signed statement by stating that he was only relaying the information told to him by Milton, who petitioner alleged was involved in the crime. (Id.)

While the court concedes that the government impeached petitioner's credibility with this line of questioning, petitioner has nonetheless failed to show that he was actually prejudiced simply because his credibility was impeached. In its direct case, the government had presented a substantial amount of evidence connecting petitioner to the November 13, 1995 burglary, including Mrs. Hill's identification of petitioner, Detective Nigro's testimony about her interviews with petitioner, and the written statements signed by petitioner. Had petitioner refrained from testifying, the evidence clearly would have been sufficient to convince a jury of petitioner's participation in the November 13, 1995 crime beyond a reasonable doubt. The mere possibility that petitioner's credibility was undermined on cross-examination, without more, is insufficient to find that he was denied a fair trial.

Petitioner also argues that the heinous nature of the first crime, which involved the stabbing of one of the victims, improperly influenced the jury's consideration of the evidence related to the second crime. Again, petitioner fails to establish that he was actually prejudiced by

10

the consolidation of both offenses in one trial. A review of the record reveals that the trial judge

explicitly instructed the jury to consider the charges related to the November 13, 1995 crime

separately from the charges related to the November 27, 1995 crime.[1] (See Tr. 1333-34.) As

stated previously, the jury is expected to follow the judge's instructions on how to treat the

evidence related offenses consolidated for trial. See Herring, 11 F.3d at 377. Thus, petitioner's

argument that the jury was improperly influenced by the heinous nature of the first crime is

without merit.

Petitioner also notes, however, that the jury asked for clarification about some of the

charges and argues that such questioning demonstrates that the jury had difficulty separating the

two crimes during deliberations despite the trial judge's instructions. The record, however, fails

to support petitioner's contention. The jury sent out two notes to the judge. The first requested a

list of the exhibits. (Tr. 1441.) The second asked for the trial court (1) to clarify why counts 17,

18, 19 and 20 are similar charges; (2) to read back Officer Mannone's testimony with regard to

when he stopped petitioner and asked for his address; and (3) to read back Mrs. Hill's testimony

regarding her initial encounter with the petitioner. (Tr. 1445.) None of these questions suggest

---

[1] The trial judge gave the following instruction to the jury with regard to the joinder of the
two indictments:

> You will observe that the People have combined this single indictment
> Counts One through Twelve and Thirteen through Twenty Three, each grouping
> of counts charging a separate incident, one allegedly occurring on November 13,
> 1995 and the second on November 27, 1995. These crimes are joined in this
> single indictment solely for the convenience of the Court.
>
> Ordinarily, the fact that a defendant is charged with one crime constitutes
> no proof that he committed another crime also charged in a single indictment.
> Therefore, unless the Court specifically instructs you otherwise, you are required
> to separate in your mind the evidence applicable solely to each incident and return
> a verdict on each count based solely on the evidence applicable to that count.

(Tr. 1333-34.)

that the jury had difficulty sorting out the two crimes. In fact, the first question relates solely to the burglary and robbery charges arising from the November 27, 1995 crime. Moreover, that the jury asked for the court reporter to read back testimony relating to each of the crimes indicates that the jury could identify and separately consider the evidence for each crime. Given that petitioner has failed to demonstrate that the jury was confused by the evidence, the court rejects petitioner's argument that the jury was improperly influenced by the consolidation of the offenses.

In sum, the decision of the Appellate Division was not "contrary to" or "an unreasonable application of" any federal law and habeas relief should be denied on this claim.

## B. *Sufficiency and Weight of the Evidence*

Petitioner claims that the evidence was legally insufficient to support his guilty verdict and the verdict went against the weight of the evidence, thus violating his due process rights under the Fourteenth Amendment. The court may not review petitioner's claims because they are procedurally defaulted, and petitioner has failed to demonstrate either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result from the court's refusal to hear the claims.

Petitioner presented these claims to the Appellate Division, which ruled that petitioner had not preserved for appellate review his "contention that the evidence was legally insufficient to establish his guilt of burglary in the first degree, robbery in the first degree, burglary in the second degree, [and] criminal possession of a weapon in the second degree." 772 N.Y.S.2d at 845. More specifically, the court held that petitioner failed to preserve this issue for review because he merely submitted a general motion to dismiss at trial, rather than a more specific

12

objection to the sufficiency of evidence for those specific charges. See id. (citing N.Y. Crim. Proc. Law § 470.05 (2)). The court went on to state that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [petitioner's] guilt beyond a reasonable doubt." Id. Under Fama, the state court's ruling constitutes a clear and unambiguous reliance on the procedural violation as a basis for its decision. See 235 F.3d at 810 n.4.

However, the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts. See James v. Kentucky, 466 U.S. 341, 348-49 (1984). As the Second Circuit has recognized, New York's contemporaneous objection rule is firmly established and regularly followed by state courts. See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). New York's contemporaneous objection rule requires both that an objection be lodged at the time of the ruling or "at any subsequent time when the court had an opportunity of effectively changing the same .... [and] is sufficient if the party made his position with respect to the ruling or instruction known to the court." N.Y. Crim. Proc. Law § 470.05(2). Under state law, timeliness as well as specificity are required for the preservation of claims of error. See People v. Gray, 86 N.Y.2d 10 (1995) (holding that even where a motion to dismiss for insufficient evidence is made, the preservation rule requires that the objection be directed specifically at the alleged error); People v. Bynum, 70 N.Y.2d 858 (1987) (finding general motion to dismiss at close of evidence insufficient to preserve claim regarding establishment of particular element of crime). In its decision, the Appellate Division, in reliance on New York Criminal Procedure Law § 470.05(2), held that defendant had similarly failed to preserve his legal sufficiency claim for appellate review. Petitioner is thus procedurally

defaulted from seeking federal habeas review on these claims unless he demonstrates either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result from the court's refusal to hear the claim. See Coleman, 501 U.S. at 750.

Petitioner has neither attempted to demonstrate cause for the default nor alleged that he is "actually innocent." A petitioner establishes cause for a default when he shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. Here, petitioner has made no such showing.[2] Moreover, petitioner has not established prejudice, which is also required to excuse procedural default. "To satisfy the prejudice prong, petitioner must show not merely a possibility of prejudice, but that the alleged error worked to his actual and substantial disadvantage." Capiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) (internal quotation marks and citation omitted). Here, petitioner is unable to show even a possibility of prejudice in light of the overwhelming evidence of his guilt for both crimes. With regard to the November 13, 1995 crime, eyewitness testimony, the lineup identification by Mrs. Hill, and multiple statements by petitioner himself established beyond a reasonable doubt petitioner's guilt for first-degree burglary, first-degree robbery, second-degree burglary, and second-degree criminal possession of a weapon. Similarly, with regard to the November 27, 1995 crime, eyewitness testimony and the testimony of Officer Mannone, who observed petitioner with the stolen bag of Nintendo games shortly after the crime occurred, established petitioner's guilt beyond a reasonable doubt.

---

[2] A claim of ineffective assistance of counsel may establish cause for a procedural default. See McKlesky v. Zant, 499 U.S. 467, 494 (1991). However, petitioner has never claimed that trial counsel was ineffective for failing to comply with New York's contemporaneous objection rule. Thus, any such claim is not exhausted and may not be considered as cause for the procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Second, petitioner has not argued that failure to hear his claim will result in a fundamental miscarriage of justice. Coleman, 502 U.S. at 752. The Supreme Court has stated that a miscarriage of justice occurs in an "extraordinary" case as where a constitutional violation has "probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 322-24 (1995). Petitioner has not presented any new evidence and, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citing Schlup, 513 U.S. at 324)). Nor has the petitioner demonstrated a miscarriage of justice by pointing to errors that call into question the validity of the trial itself, such as violation of the right against double jeopardy. See Washington v. James, 996 F.2d 1442, 1450 (2d Cir. 1993).

Since petitioner cannot show cause for the procedural default and resulting prejudice, nor can he show that a miscarriage of justice would result from the failure to consider the defaulted issue, the claim is procedurally barred and cannot be reviewed. Accordingly, Mr. Breland's claims that there was insufficient evidence at trial to support his conviction and that the verdict went against the weight of the evidence shall be dismissed without reaching the merits. See Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991).

## C. *Unreasonable Search and Seizure*

Plaintiff also claims that the physical evidence used against him at trial, which included items recovered pursuant to arrest, should have been suppressed because the police lacked probable cause to arrest him.[3]  Given that petitioner litigated this claim before the state trial

---

[3] Within this claim, petitioner also appears to argue that the trial court improperly failed to suppress identification testimony and statements because his arrest was "predicated on less than probable cause." (See Pet. at 9-A.) However, petitioner does not claim that the trial court's

court, the court is precluded from reviewing this claim on habeas review.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). The Second Circuit has identified two circumstances in which a petitioner lacks an opportunity for full and fair litigation. "If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977). Alternatively, "even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted." Id.

New York provides adequate corrective procedures to litigate Fourth Amendment claims. See Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)) ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate.'"). In this case, petitioner took advantage of these procedures. The court held a pre-trial hearing, and petitioner moved to suppress any physical evidence obtained by his arrest, which was allegedly made without probable case. (Tr. 1-229.) The court heard arguments by both parties, received briefs from both

---

failure to suppress the identification testimony was improper due to coercive or suggestive lineup techniques. Nor does petitioner claim that his statements should have been suppressed by the trial court because he was not fully informed of his Miranda rights or they were the product of coercion. Given that petitioner fails to state a constitutional claim with regard to the admission of the identification evidence and the statements, the court limits its inquiry to petitioner's Fourth Amendment claim.

parties, and ultimately denied the defendant's motion. (See Resp't Ex. A at 5-6.) Specifically, the court ruled that Officer Mannone had probable cause to arrest petitioner because he had seen him earlier near the scene of the crime in possession of a plastic bag, which was later found to contain stolen property and weapons. (See Resp't Ex. A at 5.)

Petitioner does not argue that there was an unconscionable breakdown in the process that the New York courts employed to address his Fourth Amendment claims. "An unconscionable breakdown occurs where there is some sort of "'disruption or obstruction of a state proceeding.'" Capellan, 975 F.2d at 70 (quoting Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). "To establish such a breakdown," the petitioner "would have to prove that no state court conducted a reasoned method of inquiry into the relevant questions of fact and law concerning his Fourth Amendment claim." Jones v. Barkley, No. 99 Civ. 1344, 2004 U.S. Dist. LEXIS 3113, at *16-*17 (N.D.N.Y. Feb. 27, 2004). Petitioner does not even attempt to make such a showing. Therefore, since Stone precludes federal habeas review of the petitioner's Fourth Amendment claim, the court dismisses this claim.

**D. *Unexhausted Claims***

As stated above, the court may, in its discretion, deny on the merits petitioner's unexhausted claims. See 28 U.S.C. § 2254(b)(2). Here, petitioner has raised several unexhausted claims that are "plainly meritless," Rhines, 125 S. Ct. at 1535, and are, therefore, appropriate for denial.

1) *Improper Amendment to Indictment*

Petitioner argues that the trial court violated his right to be tried on the indictment returned by the grand jury by improperly amending the indictment. Specifically, petitioner

claims that the trial court erred when it made the following edits to the language of the charges in the indictment: (1) changed the burglary counts from "knowing entered and remained unlawfully" to simply "knowingly entered"; (2) deleted the references to "night" from the burglary counts; and (3) deleted the references to "Luger" from the third-degree criminal possession of a weapon counts. (See Tr. 1201-03.) "While the Fifth Amendment's grand jury indictment clause imposes certain constraints on prosecutions in federal courts," LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002), there is no such federal constitutional constraint on prosecutions in state courts. As discussed in further detail below, New York state law provides that a criminal defendant facing felony charges is entitled to indictment by grand jury and also prohibits any prejudicial amendments to the indictment prior to or during trial. See id. at 119. However, "[t]here is no corresponding federal right to a grand jury in a state criminal prosecution." Rodriguez v. Senkowski, No. 92 Civ. 5484, 1995 WL 347024, at *2 (E.D.N.Y. May 31, 1995); see also Staley v. Greiner, No. 01 Civ. 6165, 2003 WL 470568, at *11 (S.D.N.Y. Feb. 6, 2003). Given that petitioner's claim is a question predicated on New York state law, the claim must be dismissed as beyond this court's review.

2) *Ineffective Assistance of Counsel*

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984). The two-prong Strickland test applies to claims of ineffective assistance of appellate counsel as well as of trial counsel. See

18

Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Evitts v. Lucey, 469 U.S. 387, 396-97 (1985)).

In analyzing a claim that counsel's performance fell short of constitutional standards, it is not enough for a petitioner to show that his appellate counsel omitted a nonfrivolous argument. Aparicio, 269 F.3d at 95. Instead, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

466 U.S. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Jones v. Barnes, 463 U.S. 745, 752 (1983) (explaining that an indigent appellant does not have the right to compel appointed counsel to press every nonfrivolous point on appeal and recognizing "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review"); Mayo, 13 F.3d at 533 ("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.").

A habeas petitioner may establish constitutionally deficient assistance if he shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." Aparicio, 269 F.3d at 99 (internal quotation marks and citations omitted). Finally, even if an attorney's performance were objectively unreasonable and unprofessional, the petitioner must still prove prejudice. That is, the petitioner must show "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" Aparicio, 269 F.3d at 95 (quoting Strickland, 466 U.S. at 694).

a. *Ineffective Assistance of Trial Counsel*

Petitioner claims that his trial counsel was ineffective for (1) failing to argue that the police lacked probable cause to arrest petitioner; (2) failing to challenge the admissibility of the abandoned property, the suggestiveness of the lineup, and the voluntariness of petitioner's statements; (3) failing to investigate a confidential informant; and (4) failing to challenge the felony complaint as defective.

Petitioner's first two claims of ineffective assistance of trial counsel are entirely meritless. Petitioner claims that trial counsel failed to challenge the lawfulness of his arrest and the admissibility of the abandoned property, the lineup identification, and petitioner's statements. However, the record clearly shows that trial counsel filed an omnibus motion, challenging whether the police had probable cause to arrest petitioner and seeking to suppress all of the foregoing evidence. Prior to the trial, the court held a lengthy hearing, in which trial counsel

20

thoroughly cross-examined Officer Mannone, Officer Hines, Detective Nigro, and Detective Cashen on the arrest, search, identification, and interrogation of petitioner (See Tr. 1-229.) After the hearing, the trial court issued a written opinion denying petitioner's motion. (See Resp't Ex. A.) Thus, the record reveals that petitioner's claims that trial counsel failed to challenge the lawfulness of the arrest or move to suppress the evidence are patently false. The court therefore dismisses the first two claims of ineffective assistance of trial counsel.

Petitioner's third claim is that trial counsel was ineffective for failing to investigate the confidential informant, who allegedly cooperated with the police and provided information that led to petitioner's arrest. The Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 690-91). Even if, under the standard established in Strickland and reiterated in Wiggins, counsel's decision not to seek the identity of the informant and pursue a more detailed investigation of the informant was unreasonable and fell below an objective standard of reasonableness, petitioner has failed to establish that he suffered any prejudice as a result. Petitioner does not allege that this informant testified against him at trial. At most, he alleges that the informant provided information to the police that formed the basis of probable cause to arrest him on November 27, 1995. However, the record indicates that Officer Mannone had probable case to arrest him because he had observed him with a bag, which was later found to contain weapons and stolen property. (See Resp't Ex. A at 4-5.) Petitioner has failed to indicate the relevance, if any, of the informant's role in his arrest or whether further investigation of the informant would have affected the trial court's probable cause determination. Thus, habeas relief is unwarranted on this

claim.

Petitioner's fourth claim is that trial counsel was ineffective for failing to challenge the felony complaint as defective. Petitioner argues that the felony complaint is defective because it is, in part, based on Officer Mannone's allegedly false assertion that he received a description of petitioner's clothing from the complainant in the second crime. Petitioner appears to be referring to Officer Mannone's testimony at the pre-trial hearing, in which he admitted that he received the description of petitioner's clothing from complainant only after petitioner's arrest and, therefore, it was not the basis of his decision to stop petitioner on November 27, 1995. (See Tr. 68-71.) Although the record establishes that the complainant's description was not the basis for Officer Mannone's determination that he had probable cause to arrest petitioner, that in no way suggests that Officer Mannone made a false assertion or that the felony complaint is somehow defective. Thus, the court cannot conclude that trial counsel was unreasonable for failing to challenge the felony complaint as defective. Given that petitioner fails to satisfy the first prong of Strickland on this claim, habeas relief is not warranted here.

b. *Ineffective Assistance of Appellate Counsel*

Petitioner claims that appellate counsel was ineffective for presenting weak claims on direct appeal and failing to present meritorious arguments on his behalf. Appellate counsel raised two claims on appeal: (1) that the trial court improperly joined the two indictments for trial and (2) that there was insufficient evidence to find petitioner guilty beyond a reasonable doubt and that the verdict went against the weight of the evidence. (See Resp't Ex. E.) Petitioner raised both claims in the instant case and, thus, cannot reasonably argue that he did not believe they were sufficiently meritorious to raise on direct appeal.

While petitioner does not identify which claims he believes would have been meritorious on direct appeal, the court surmises that petitioner believes his appellate counsel should have raised the claim he raised in his pro se supplemental brief on direct appeal and the claims he raises in the instant petition: (1) that the trial court erred in denying his motion to suppress the physical evidence, identification testimony, and statements; (2) that he was denied ineffective assistance of trial counsel; and (3) that he was denied his right under the New York State Constitution to be tried under the indictment returned by the grand jury due to the trial court's amendment of the indictment. The first claim was dismissed as meritless by the Appellate Division and the claim of ineffective assistance, as discussed in detail above, is meritless. Thus, neither of those claims meets the first prong of the Strickland analysis, as appellate counsel cannot be unreasonable for failing to make meritless arguments on appeal. See Aparicio, 269 F.3d at 99.

Petitioner's claim with regard to the amendment of the indictment also fails to meet the first prong of Strickland. As the Second Circuit has recognized in the context of ineffective assistance claims, under New York law, "an amendment [to the indictment] is appropriate to correct errors, so long as it does not prejudice the defendant." LanFranco, 313 F.3d at 119 (citing N.Y. Crim. Pro. Law § 200.70(1)). Here, petitioner argues that the amendment of the indictment prejudiced him by allowing the prosecution to change the theory of the case and undermining his trial strategy. Petitioner's argument is without merit. The amendments made to the language of the burglary and weapon possession counts of the indictment were made after the prosecution and the defense made their opening arguments and presented all their evidence. More importantly, the changes involved minor, technical details. The trial court merely removed the

23

time of occurrence (i.e., at night) from the burglary counts; corrected the burglary counts to read "knowingly entered" instead of "knowing entered and unlawfully remained in"; and removed the unnecessary detail of the name of the pistol magazine from the third-degree weapon possession count. (See Tr. 1201-03.) None of these minor amendments affected a material element of the crime, thereby changing the theory of the prosecution. In fact, with regard to the burglary counts, the prosecution presented evidence at trial showing that the burglaries occurred at night, (see, e.g., Tr. 576, 825-26), and that petitioner both entered and remained in the premises during the commission of each crime (see, e.g., Tr. 577-85, 827-33). Given that petitioner has failed to establish that the amendment of the indictment prejudiced his case, the court concludes that petitioner's argument that the amendment of the indictment was improper is meritless. See Blumen v. McGann, 796 N.Y.S.2d 380 (2d Dep't 2005) (holding that amendment to indictment is proper when it does not change prosecution's theory of the case or otherwise prejudice defendant); See People v. DeSanto, 629 N.Y.S.2d 460 (2d Dep't 1995) (same). Appellate counsel is not ineffective for failing to raise a meritless argument on appeal. Thus, the court concludes that petitioner fails to satisfy the first prong of Strickland. Accordingly, habeas relief is not warranted on petitioner's ineffective assistance of appellate counsel claims.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims because the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: March 27, 2006
Brooklyn, New York

**SERVICE LIST**

***Pro Se* Petitioner:**

Chad Breland
97A6918
Clinton Correctional Facility
PO Box 2001
Dannemora, NY 12929


**Respondent's Counsel:**

Ashlyn Hope Dannelly
Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, NY 10271